1

2

3

4

5

6

7

8

9

10

The Honorable Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11

12

13

14

15

16

17

18

19

NEW YORK STUDIO, INC., ATLAS
INTELLECTUAL PROPERTIES, LLC, and
RISE OF THE PHOENIX, INC.,

Plaintiffs,

v.

BETTER BUSINESS BUREAU OF ALASKA,
OREGON AND WESTERN WASHINGTON,

Defendant.

No.  3:11-cv-05012-RBL

DECLARATION OF TIFFEN ESHPETER
IN SUPPORT OF DEFENDANT'S
SPECIAL MOTION TO STRIKE
PURSUANT TO THE WASHINGTON
ACT LIMITING STRATEGIC LAWSUITS
AGAINST PUBLIC PARTICIPATION
(ANTI-SLAPP ACT) AND
FED. R. CIV. P. 12(C) MOTION TO
DISMISS

**Note on Motion Calendar:
March 18, 2011**

Without Oral Argument

20

21

22

23

24

25

26

27

28

Tiffen Eshpeter states and declares as follows:

1.      I am over the age of 18 and am competent to testify herein.

2.      I am the Senior Vice President for the Better Business Bureau of Alaska, Oregon and Western Washington (hereinafter "BBB").

3.      Defendant BBB is a Washington State non-profit corporation with its registered office located in DuPont, Washington.

4.      Defendant's business purpose and mission is to be a leader in advancing marketplace trust by creating a community of trustworthy businesses, encouraging and

DECLARATION OF TIFFEN ESHPETER
IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO
STRIKE PURSUANT TO WASHINGTON'S ANTI-SLAPP ACT
& 12(C) MOTION TO DISMISS - 1
(3:11-cv-05012-RBL)

**GORDON & REES** LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone:  206-695-5100
Facsimile:  206-689-2822

1  supporting best business practices, setting standards for marketplace trust, celebrating

2  marketplace role models, and denouncing substandard marketplace behavior.

3      5.    The BBB provides educational information and expert advice regarding

4  businesses and charities that is free of charge and easily available.  It is also a significant

5  distributor of consumer and business education information, as well as tips and alerts about

6  marketplace scams.

7      6.    The BBB has a strong reputation for being the preeminent resource to turn to for

8  objective, unbiased information on businesses and charities.

9      7.    The BBB is licensed by the Council of Better Business Bureaus, Inc. ("CBBB"),

10  which is a network hub for Better Business Bureaus across the United States and Canada.

11     8.    The Company "T*he*" is pronounced "Tay".  A search in Google for the terms

12  "pronounced", "Tay", and "scam" brings up over 5,000 articles.  If the search is limited to the

13  last year (the BBB's press release was issued in October 2010), less than 1,000 articles are

14  found.  In other words, over 4000 articles (or at least search results) existed before the BBB's

15  press release was sent out.

16     9.    Attached as **Exhibit 1** is a true and accurate copy of the Business Reliability

17  Report issued by the Phoenix Better Business Bureau ("Phoenix Bureau"), sometime between

18  August 1, 2009 and early September 2009.

19     10.   The Phoenix Bureau is a separate and distinct entity from the Defendant BBB.

20  Defendant BBB did not republish the Business Reliability Report.

21     11.   Attached as **Exhibit 2** is a true and accurate copy of the St. Louis Better Business

22  Bureau's ("St. Louis Bureau) March 27, 2009 Press Release.

23     12.   Attached as **Exhibit 3** is a true and accurate copy of the St Louis Bureau

24  August 13, 2010 Press Release.

25     13.   Attached as **Exhibit 4** is a true and accurate copy of the Complaint filed by New

26  York Studio, Inc., one of the Plaintiffs in this case, on October 18, 2010, against the Phoenix

27  Bureau and other parties in Federal District Court of Arizona.

28

DECLARATION OF TIFFEN ESHPETER
IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO
STRIKE PURSUANT TO WASHINGTON'S ANTI-SLAPP ACT
& 12(C) MOTION TO DISMISS - 2
(3:11-cv-05012-RBL)

**GORDON & REES** LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone:  206-695-5100
Facsimile:  206-689-2822

1      14.     On January 25, 2011, the Court dismissed Defendant BBB from the Arizona suit

2   for lack of subject-matter and personal jurisdiction given that complete diversity between

3   Plaintiffs and Defendants did not exist.

4      15.     Attached as **Exhibit 5** is a true and accurate copy of the Complaint filed by

5   Plaintiffs on December 17, 2010, against the St. Louis BBB in the Federal District Court of

6   Missouri.

7      16.     Since the initial press release, Defendant BBB learned of further predatory and

8   questionable business practices of *The*, New York Studio and their various affiliates.

9      17.     In late February, New York Studio conducted one of their "talent" searches in

10  Washington. Yet, the BBB felt it could not issue even the most basic warning to parents because

11  of the pending lawsuit.

12      I declare under penalty of perjury under the laws of the United States and the state of

13  Washington that the foregoing is true and correct.

14      Signed on February 23, 2011 at Seattle     , Washington     .

15

16                                          TIFFEN ESHPETER

17

18

19

20

21

22

23

24

25

26

27

28
    DECLARATION OF TIFFEN ESHPETER                         **GORDON & REES** LLP
    IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO            701 5th Avenue, Suite 2100
    STRIKE PURSUANT TO WASHINGTON'S ANTI-SLAPP ACT         Seattle, WA  98104
    & 12(C) MOTION TO DISMISS - 3                          Telephone: 206-695-5100
    (3:11-cv-05012-RBL)                                    Facsimile: 206-689-2822

**DECLARATION OF SERVICE**

The undersigned declares under penalty of perjury under the laws of the State of Washington that on this day, I electronically filed a true and accurate copy of the document to which this declaration is affixed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Bradley A. Maxa
Gordon Thomas Honeywell LLP
1201 Pacific Avenue, Suite 2100
P.O. Box 1157
Tacoma, WA  98401-1157
bmaxa@gth-law.com

David Ludwig
Dunlap, Grubb & Weaver, PLLC
199 Liberty Street, S.W.
Leesburg, VA  20175
glundwig@dglegal.com

Dated this _24th_ day of February, 2011, at Seattle, Washington.

_____
Andrea W. Preston

DECLARATION OF TIFFEN ESHPETER
IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO
STRIKE PURSUANT TO WASHINGTON'S ANTI-SLAPP ACT
& 12(C) MOTION TO DISMISS - 4
(3:11-cv-05012-RBL)

SPTBC/1067845/9182679.1

**GORDON & REES** LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone:  206-695-5100
Facsimile:  206-689-2822

EXHIBIT  1

## *BBB Business Review Reliability Report for* ACT

### Rating: F

BBB issues Reliability Reports on all businesses, whether or not they are BBB accredited. If a business is a BBB Accredited Business, it is stated in this report.

### BBB Accreditation

This business is not a BBB Accredited Business.

### BBB Rating

Based on BBB files, this business has a BBB Rating of F on a scale from A+ to F. Reasons for this F rating include:

- Length of time business has been operating
- 38 complaints filed against business
- 19 serious complaints filed against business
- Government action(s) against business

Click here for an explanation of BBB Ratings.

### Business Contact & Profile

|  |  |
|---|---|
| Business Name: | ACT |
| | Academy of Cinema and Television |
| | Academy of Cinema and TV |
| | DGS Productions, LLC |
| | Edge 1 Productions, LLC |
| | NedGam Productions, LLC |
| | THE |
| Business Address: | 40 N. Central Avenue #2250 |
| | Phoenix, AZ 85004 |
| Original Business Start Date: | 2/28/2007 |
| Local Business Start Date: | 2/28/2007 |
| Type of Entity: | Limited Liability Company (LLC) |
| Incorporated: | 2007 in AZ |
| Principals: | George Gammon, Manager |
| | Elizabeth Solis-Santana, Business Manager |
| Phone Number: | (602) 261-5800 |
| | (702) 990-3393 |
| Fax Number: | (602) 261-5801 |
| BBB Accreditation: | This business is not a BBB Accredited Business |
| Type of Business: | SCHOOLS-GENERAL INTEREST |
| | DRAMA INSTRUCTION |
| | SCHOOLS-PRIVATE |
| Website Address: | |
| http://www.theact.tv | |

http://theorlando2010.info
http://www.academyofcinemaandtv.com
http://www.expthe.tv

## Products & Services

This company offers drama school instruction services.

## Business Management

Ms. Elizabeth Solis-Santana , Business Manager

## Additional Locations & Phone Numbers

2355 E. Camelback Road #610 Phoenix , AZ 85016

(602) 522-0671
(877) 328-8619

## Licensing

This business is in an industry that may require professional licensing, bonding or registration. BBB encourages you to check with the appropriate agency to be certain any requirements are currently being met.

These agencies may include:

Arizona Department Of Education (602) 542-4361

## Customer Complaint History

This reflects national complaint activity.

When considering complaint information, please take into account the business's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

BBB processed a total of 38 complaint(s) about this business in the last 36 months, our standard reporting period. Of the total 38 complaint(s) closed in the last 36 months, 15 were closed in the last 12 months.

These complaints concerned:

- 2  regarding Advertising Issues
- 2  regarding Billing or Collection Issues
- 4  regarding Contract Disputes
- 1  regarding Delivery Issues
- 1  regarding Product Issues
- 18  regarding Refund Or Exchange Issues
- 10  regarding Selling Practices

These complaints were closed as:

- 16  Administratively Closed
- 22  Resolved

### Government Action(s)

CF Attorney General

On May 4, 2009 the Connecticut Attorney General's office announced a settlement agreement with THE, in conjunction with the Department of Consumer Protection. This settlement resolves claims that the organization's contracts are defective and flawed and provides for changes in business practices, as well as refunds. The Attorney General's office will be sending overnight letters to about 95 Connecticut residents who signed up for the event, informing them that they can receive full refunds if they withdraw before the event's Thursday morning start. They are also working with the company to contact as many of the approximately 240 out-of-state families also scheduled to attend as possible. Participants who arrive at the event Thursday morning will receive a notice that they can withdraw and request a refund that morning. Consumers must give notice of their cancellation before the event's start on the morning of Thursday, May 7. Consumers will not be charged a cancellation fee.

THE also has agreed to forfeit $25,000 to the state of Connecticut to settle allegations that its contract clause for refunds violated state law.

To withdraw from the competition and receive a full refund, consumers can:

- Email THE at director@expthe.tv,
- Fax THE at 602-522-2225
- Call THE at 702-494-7750 or
- Send written notice to THE by US Mail or recognized overnight courier at 2355 E. Camelback Rd. #610, Phoenix, AZ 85016.

Consumers with questions or needing assistance should contact the Attorney General's Office at (860) 808-5400.

- €
- €
- €
- €
- €
- €

### Advertising Review

BBB has no information regarding advertising review at this time.

### BBB Copyright and Reporting Policy

As a matter of policy, BBB does not endorse any product, service or business.

BBB Reliability Reports are provided solely to assist you in exercising your own best judgment. Information in this BBB Reliability Report is believed reliable, but not guaranteed as to accuracy.

BBB Reliability Reports generally cover a three-year reporting period. BBB Reliability Reports are subject to change at any time.

If you choose to do business with this business, please let the business know that you contacted the BBB for a BBB Reliability Report.

Report as of: 8/11/2010
Copyright © 2010 Better Business Bureau®, Inc. serving Central, Northern and Western Arizona

EXHIBIT  2

**FOR IMMEDIATE RELEASE**

Contact:  Michelle L. Corey, 314-645-4636 (unlisted), mcorey@stlouisbbb.org
Chris Thetford, 314-645-4636 (unlisted), communications@stlouisbbb.org

## TALENT IS NOT FREE

### Parents attending auditions downtown St. Louis are warned of hidden fees.

*St. Louis, Mo., March 27, 2009* – Is your child an undiscovered star or have aspirations of stardom?  According to its Web site, the company *The* helps make "dreams become a reality" for local children.  However, some parents say they were sold something different.

The company, *The*, aka **NedGam Productions, LLC**, with locations listed at 2355 E. Camelback Rd., Ste. 610, Phoenix, Az. And 701 N. Green Valley Parkway, Ste. 200, Henderson, Nev., travels from city to city holding auditions for children.  The company is advertising locally, postcards and television ads, aimed at children and teens to attend a free talent search this Sunday at the Hilton Hotel in downtown St. Louis.

The ads, which present a caricature of a young girl, are inappropriate according to the Children's Advertising Review Unit (CARU), a division of the Council of Better Business Bureaus.  CARU states that advertisers have special responsibilities when advertising to children and should not stimulate children's unreasonable expectations about a product or performance.

**Innovative Artists Talent & Literary Agency**, 1505 10th St., Santa Monica, Ca., is another company participating in this weekend's talent search with *The*.  The event promotes itself as a free event but *The*'s Web site indicates that fees range for various packages from $1,950 to $4,900.  When contacted by phone, the company booking reservations for Sunday's event refused to provide any information concerning fees or contracts.

-more-

According to newspaper and blog reports, The is under investigation by the Connecticut Attorney General. Complaints about the company include telling parents that their child has the look to make it and that it's the chance of a lifetime. Some bloggers indicate that they have spent large sums of money and have been asked to re-locate to Los Angeles without any guarantee of employment for the child. Others state that once they sign with the company, they are provided a "manager" who cannot get your child work; only an agent can do that.

"The important thing to remember in this industry is that you are an independent contractor; you work for yourself. Reputable agencies only make money when their client's work," said Christina Klobe, Director of Centro Models/Talent Plus. "People are so enamored by this industry, they fail to stop and ask questions."

Nathan Blay is listed as the Principal member of The.

To help you detect fraudulent opportunities, the Better Business Bureau warns that **disreputable** agencies often:

- Ask for up-front money, which may be called "registration," "consultation," or "administrative" fees. Legitimate agents work on a commission. They don't get any money until you get paid for doing the work they have obtained for you.

- Pressure you to leave a check or cash deposit or sign a contract immediately. The agent may insist that you take acting lessons at a particular school or from a particular teacher; or may try to get you to buy expensive photographs, audition tapes, or other services or materials sold by someone he or she suggests. An agent's time should be spent finding work for his or her client, not selling products and services.

- Display pictures of famous models or celebrities on the walls to make you believe they are represented by that agency, although they're not.

- Use names which sound similar to well-known agencies. Fraudulent companies will sometimes do this to give the incorrect impression that they are connected to a legitimate entity.

- Place phony ads in the help wanted section of newspapers that say something like, "new faces wanted" for commercials, movies or modeling or claim that "no experience is necessary."
- Guarantee employment or high earnings.

Problems or complaints about an agent or an agency may be referred to the BBB, state Department of Licensing and Regulation or consumer protection agency in the state where the company is located. To obtain helpful consumer information on a particular agency, you will need to contact www.bbb.org.

EXHIBIT  3

FOR IMMEDIATE RELEASE

Contact: Michelle L. Corey, 314-645-4636 (unlisted), mcorey@stlouisbbb.org
          Bill Smith, 314-645-4636 (unlisted), tbc1@stlouisbbb.org

## BBB Asks Parents to Be Wary of Chesterfield Acting and Modeling Event This Weekend

*St. Louis, Mo., August 13, 2010 – The*, a sometimes- controversial Arizona company that claims to help aspiring young actors and models break into the entertainment business, has scheduled a series of auditions with St. Louis area youngsters tomorrow (Saturday) at The Doubletree Hotel & Conference Center in Chesterfield, Mo.

The Better Business Bureau (BBB) suggests that parents who have scheduled appointments for their children at the auditions be cautious when attending the event. While there is no charge for attending Saturday's auditions, the company's website says the families of those children who are invited to a private, performing arts competition in December in Orlando, Fla., will be charged  $1,950 or more for that event.

In May 2009, Connecticut Attorney General Richard Blumenthal announced that The (pronounced 'Tay') had agreed to grant consumers full refunds in advance of an event in that state and also agreed to forfeit $25,000 to the state. "The settlement resolves claims that the organization's contracts are defective and flawed and provides for changes in business practices," Blumenthal said.

Last month, KMBC- TV in Kansas City reported that a Lee's Summit, Mo., woman said she paid the company $21,000 for her three children to attend the Orlando event.  The woman told the station that after researching the company, she would ask for a refund. She said that even though she was told that only a limited number of children would receive invitations to the Orlando event, all of her children and all of her friends' children received invitations.

The St. Louis BBB issued a news release on the company in March 2009, warning parents that the free event ultimately could end up costing thousands of dollars. The company has an "F" grade with the Phoenix BBB, the lowest grade possible.

(More)

Michelle Corey, president and CEO of the BBB, said, "Every parent wants to believe that his or her child could be the next Hollywood sensation. The truth is the odds of this happening are remote at best. If a family wants to take their child to Florida, a better investment might be a trip to Disney World."

Two BBB employees who phoned a toll-free number advertised on a St. Louis radio station were told the event was free and were not informed of subsequent paid events. A young woman who spoke to one of the BBB employees said, "Leave your wallet at home; good luck to your family." She also said that Christopher Ledford, representing a national talent agency, also would be attending the Chesterfield event. Several other telemarketing employees returned phone calls to a BBB employee, and said the Saturday event was an "acting and modeling audition. We showcase talent for Disney shows and Virgin records."

The website for the Orlando event, www.theeventsorlando.info/, said the December event "provides a rare opportunity for aspiring models and actors to perform live in front of dozens of the industry's most influential people. From agents and managers to casting directors and celebrities, participants receive valuable information and networking opportunities to help make dreams become a reality."

The company, responding to e-mails sent by the BBB to a Washington, D.C., attorney, said the Saturday event is for children ages 6-17. The Orlando event in December, the company said, "is an amazing, family friendly event hosted in the amazing Walt Disney World Swan and Dolphin Resort Orlando." Those events "combine Disney World fun, celebrities, dance parties, live concerts, Q & A with industry professionals, a Hollywood style red carpet, an 'Oscars' night award show, and $50,000 in prize money."

The BBB offers the following tips for families interested in pursuing modeling and acting careers for their children:

- Be very careful about any requests for up-front payments in the form of registration, consultation or administrative fees.
- Understand that this is a very competitive business and a paid seminar or event may not be the best way to get agents and others to notice your child.
- Be wary of any promises of guaranteed employment or high earnings.
- Be cautious of companies that try to convince you to pay them money by throwing out names of known celebrities, motion picture studios or recording companies.
- Check business Reliability Reports at www.bbb.org or by calling 314-645-3300.

-30-

EXHIBIT  4

1  Steven M. White (#020061)
2  Paul D. Ticen (#024788)
   **WHITE BERBERIAN PLC**
3  60 E. Rio Salado Pkwy., Suite 900
4  Tempe, Arizona  85281
   Tel:  (480) 626-2783
5  Fax:  (480) 718-8368
6  E-mail:  swhite@wbazlaw.com
           pticen@wbazlaw.com
7  *Attorney for Plaintiff*

8              UNITED STATES DISTRICT COURT

9                   DISTRICT OF ARIZONA

10
   NEW YORK STUDIO, INC., a Delaware
11 corporation,                          NO.  CV-10-02078-PHX-SRB

12                Plaintiff,
                                         AMENDED COMPLAINT
13 v.

14                                       (JURY TRIAL DEMANDED)
   THE BETTER BUSINESS BUREAU, INC., an
15 Arizona non-profit corporation; THE BETTER
   BUSINESS BUREAU OF GREATER ST. LOUIS,   (SERVICE BY PRIVATE PROCESS)
16 INC., a Missouri non-profit corporation; BETTER
17 BUSINESS BUREAU OF ALASKA, OREGON
   AND WESTERN WASHINGTON, a Washington
18 non-profit corporation; and COUNCIL OF
19 BETTER BUSINESS BUREAUS, INC., a
   Delaware non-profit corporation.
20
21                Defendants.

22

23              **FIRST AMENDED COMPLAINT**

24
25     Plaintiff, New York Studio, Inc. (hereinafter the "Plaintiff" or "NYS") requests

26 judgment and damages from Defendants The Better Business Bureau, Inc. (the "Phoenix

27 BBB"), The Better Business Bureau of Greater St. Louis, Inc. (the "St. Louis BBB"), Better

28

Case 2:10-cv-02078-SRB   Document 7   Filed 10/18/10   Page 2 of 15

Business Bureau of Alaska, Oregon and Western Washington (the "Alaska BBB"), and Council of Better Business Bureaus, Inc. (the "Council of BBBs") (collectively, the "Defendants").

**PARTIES**

1.      NYS is a Delaware corporation, which trades under the business name "T*he*" and is in the business of organizing modeling and acting events nationwide.

2.      The Phoenix BBB is an Arizona non-profit corporation that is a local franchise of the Council of Better Business Bureaus, Inc. (a Delaware corporation).

3.      The St. Louis BBB is a Missouri non-profit corporation that is a local franchise of the Council of Better Business Bureaus, Inc.

4.      The Alaska BBB is a Washington non-profit corporation that is a local franchise of the Council of Better Business Bureaus, Inc.

5.      The Council of BBBs is a Delaware non-profit corporation whose mission statement states that it is "the resource to turn to for objective, unbiased information on businesses."

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because all three parties are citizens of different states and the amount in controversy exceeds $75,000.00.

7.      This Court has personal jurisdiction over the Phoenix BBB because the Phoenix BBB is an Arizona corporation with a principal place of business in this judicial district.

Case 2:10-cv-02078-SRB   Document 7   Filed 10/18/10   Page 3 of 15

8.      This Court has personal jurisdiction over the St. Louis BBB pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure and the due process clause of the United States Constitution based on its pattern of conduct in conspiring with the Phoenix BBB and other contacts with the forum.

9.      This Court has personal jurisdiction over the Alaska BBB pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure and the due process clause of the United States Constitution based on its pattern of conduct in conspiring with the Phoenix BBB and other contacts with the forum.

10.     This Court has personal jurisdiction over the Council of BBBs pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure and the due process clause of the United States Constitution based on its pattern of conduct in conspiring with the Phoenix BBB and other contacts with the forum.

11.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a).

A.      **ALLEGATIONS OF FACT**

12.     NYS is engaged in the business of organizing the acting and modeling events nationwide under the "The" brand. "The" events are performance-based talent competitions that represent a wholesome, fun and family-oriented way to expose children to certain aspects of the entertainment business.  The children are provided with an opportunity to meet and perform for representatives from in the entertainment industry, and each participant gets their chance to shine, just as people auditioning for TV shows like "American Idol" or "America's Got Talent" are provided an opportunity to showcase their talents.

3

13.    On August 1, 2009, NYS purchased the "The" trade name, trademarks, business goodwill, and other business assets related to the "The" modeling and acting event organization business from NedGam Productions, LLC, a Nevada limited liability company.

14.    The managing member of NedGam Productions is George Gammon, who is also the managing member of another Nevada limited liability company, DGS Productions, LLC, which trades under the names "ACT" and "Academy of Cinema and Television." Therefore, prior to August 1, 2009, the companies trading as "ACT" and "The"—although distinct entities—had common ownership.

15.    NYS is owned by Michael Palance, who is NYS's sole shareholder.

16.    NYS does not have any ownership interest in NedGam Productions or DGS Productions, and it has never had any ownership interest in these companies.

17.    Neither NedGam Productions nor DGS Productions has any ownership interest in NYS, and they have never had any ownership interest in NYS.

18.    Michael Palance does not have any ownership interest in NedGam Productions or DGS Productions, and he has never had any ownership interest in these companies.

19.    Since purchasing the "The" brand and business assets in August 2009, NYS has invested significant resources in developing a nationwide reputation for providing aspiring young models and actors with a rare opportunity to perform live at a family friendly events which takes place at the Walt Disney World Swan and Dolphin Hotel.

4

20.     Neither NYS nor the "The" business are currently or ever have been engaged in the business of offering or providing modeling agency or talent agency services or acting school services.

21.     Since purchasing the "The" brand and business assets in August 2009, NYS has invested significant resources in improving The's reputation, which suffered from some negative publicity prior to the purchase related to a few consumer complaints and an early 2009 investigation by the Connecticut Attorney General regarding some contractual provisions in one of NedGam Productions' agreements.

<u>The Phoenix BBB's "Business Reliability Report"</u>

22.     Between August 1, 2009 and late August or early September 2010, the Phoenix BBB published on its website a single "Business Reliability Report" for ACT, which falsely stated that "The" is a fictitious business name of ACT and that "The" is a drama instruction school.

23.     During this time, if any consumer or business affiliate of "The" searched for "The" on any of the Better Business Bureau's national or regional websites, they were directed to the aforementioned "Business Reliability Report" published by the Phoenix BBB.

24.     This "Business Reliability Report" falsely stated or falsely implied that there had been thirty-nine (39) consumer complaints filed against "The" in the past thirty-six (36) months (as of August 2010), twenty (20) of which were "serious complaints."

25.     This is false and misleading because only a few of these complaints were actually filed against "The"; the remainder were filed against the other entities falsely grouped as fictitious names on the "Business Reliability Report."

26.     The "Business Reliability Report" is also false and misleading because "The" is not a drama instruction school.

27.     From at least as early as January 2010 through September 2010, NYS, through its agents, repeatedly and expressly notified the Phoenix BBB that "The" was not affiliated with ACT, NedGam Productions, DGS Productions, or any of the other entities listed on the ACT "Business Reliability Report."

28.     Despite this actual knowledge of the falsity of the "Business Reliability Report," the Phoenix BBB continued to publish the false report on its website through late August or early September 2010.

29.     In addition, as recently as August 2010, the Phoenix BBB falsely stated to media outlets that ACT and "The" are the same company.

### The St. Louis BBB's Republication

30.     On information and belief, the St. Louis BBB has engaged in a pattern of republication of the Phoenix BBB's false statements, from August 2009 through the present.

31.     Although there is not a separate "Business Reliability Report" issued for "The" by the St. Louis BBB, it has made numerous knowingly false republications of the Phoenix BBB's false statements to both consumers and the media.

6

32.     In August 2010, just before a scheduled "The" event in Chesterfield, Missouri, the St. Louis BBB affirmatively issued press releases and reached out to local media repeating the Phoenix BBB's falsehoods about the number of complaints against "The" and its purported affiliation with ACT.

33.     In August 2010, when consumers called the St. Louis BBB to inquire about the upcoming "The" event in Chesterfield, Missouri, representatives of the St. Louis BBB told the consumers, "Leave your wallet at home."

<u>The Alaska BBB's "Consumer Warning"</u>

34.     On October 8, 2010, one day before a scheduled "The" audition event at the Dena'ina Civic and Convention Center in Anchorage, Alaska, the BBB issued a press release concerning the event.

35.     The October 8, 2010 press release falsely stated or implied that "The" is a "talent and modeling agency" and encouraged local consumers to exercise caution before doing business with "The" based on this false statement of fact.

36.     On information and belief, the Alaska BBB's October 8, 2010 press release was disseminated and published to local media outlets and to the general public.

37.     On information and belief, the Alaska BBB's October 8, 2010 press release was informed by the false statements of the Phoenix BBB, which were re-disseminated by the Council of BBBs.

7

### The Council of BBBs' Information Sharing Network

38.    The Council of BBBs maintains an information sharing network that facilitates the dissemination and re-dissemination of information among regional Better Business Bureau franchises across North America.

39.    The central hub of this information sharing network is the bbb.org second-level domain, which hosts numerous regional subdomains (i.e., [geographic designator].bbb.org) as well as email and, on information and belief, other communication dissemination mechanisms.

40.    On information and belief, the Council of BBBs uses this information sharing network to republish and re-disseminate information created by and published by regional Better Business Bureau franchises.

41.    On information and belief, the Council of BBBs employed its information sharing network to re-publish and re-disseminate false information regarding "The" provided by the Phoenix BBB and the St. Louis BBB.

### The Effects of the False Statements

42.    Since August 2009, numerous "The" customers who had already willingly entered into an agreement to attend a "The" event have contacted "The" seeking to cancel their contract and asking for a full refund based solely on hearing about the contents of the Phoenix BBB's "Business Reliability Report," the St. Louis BBB's republication of those falsehoods, or the Alaska BBB's press release, either directly or via local or national media outlets.

43.    Since August 2009, attendance at "The" events has decreased markedly as a direct result of the Defendants' defamatory statements and re-publication of those statements.

8

44.     Since August 2009, two of the Hollywood casting directors that regularly attended "The" events have expressed concern about continuing their long and fruitful relationship with "The" because of the negative publicity that is being generated by the Phoenix BBB and the St. Louis BBB. As a direct result of the negative publicity, these casting directors have asked NYS to refrain from using their names in connection with "The" promotional materials.

45.     Since August 2009, one of the venues that has regularly hosted "The" events in the past has refused to host additional events, causing the cancellation of a planned "The" event.

## COUNT I:  DEFAMATION
### (NYS v. Phoenix BBB, St. Louis BBB, and Alaska BBB)

46.     The allegations in paragraphs 1 through 45 are re-alleged and incorporated by reference as if fully set forth herein.

47.     The statements made by the Phoenix BBB, the St. Louis BBB, and the Alaska BBB (collectively, the "Regional BBB Defendants") after August 1, 2009 that (1) "The" is the same company or is affiliated with ACT; (2) there been thirty-nine (39) consumer complaints filed against "The" in the past thirty-six (36) months (as of August 2010), twenty (20) of which were "serious complaints"; and/or (3) "The" is an acting and modeling agency (collectively, the "False Statements") are false, and the facts underlying those statements are false.

48.     The False Statements are of, or concerning, NYS d/b/a "The."

9

Case 2:10-cv-02078-SRB   Document 7   Filed 10/18/10   Page 10 of 15

49.     The False Statements have harmed and continue to harm the reputation of NYS, lower the company in the estimation of its consumers and business partners, and deter consumers and business partners from doing business with and associating with NYS.

50.     The Regional BBB Defendants have published the False Statements to actual and potential consumers of NYS, as well as to local and national media outlets.

51.     The Regional BBB Defendants made the False Statements with actual malice, existing at the time the False Statements were made, with a wanton and willful disregard of the rights of NYS, and with a reckless indifference to and a reckless disregard of the truth or falsity of those statements.

52.     The False Statements constitute a substantial danger to NYS's reputation and prejudice NYS in its profession or trade, as they are allegations of unfitness to carry on a business or profession.

53.     The False Statements are actionable *per se*, and as such, require no proof of actual injury to be actionable.

54.     In addition, NYS has suffered actual injury in this case because the False Statements induced actual customers to seek cancellation of their contracts, potential customers to avoid doing business with NYS, and business partners to refuse to continue in their business relationship with NYS.

55.     NYS has invested time and resources to counter the False Statements and rehabilitate its professional reputation.

56.     These actual damages from the False Statements total at least $15,000,000.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count I: (i) enter a judgment in favor of the Plaintiff and against the Regional BBB Defendants, jointly and severally; (ii) award the Plaintiff FIFTEEN MILLION DOLLARS ($15,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff SIXTY MILLION DOLLARS ($60,000,000) in punitive damages; (iv) order the Regional BBB Defendants pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

## COUNT II:  TORTIOUS INTERFERENCE WITH CONTRACT AND/OR BUSINESS EXPECTANCY
### (NYS v. Phoenix BBB, St. Louis BBB, and Alaska BBB)

57.   The allegations in paragraphs 1 through 56 are re-alleged and incorporated by reference as if fully set forth herein.

58.   There was an existing business relationship between NYS and numerous customers who had already contracted to attend a "The" event at the time the Regional BBB Defendants made the False Statements or at the time that the False Statements were republished by the media to these customers.

59.   There was an existing business relationship between NYS and casting directors Paul Weber and Christian Kaplan at the time the Regional BBB Defendants made the False Statements or at the time that the False Statements were republished by the media to Paul Weber and Christian Kaplan.

60.   There was an existing business relationship between NYS and the Overland Park Convention Center at the time the Regional BBB Defendants made the False Statements or at

11

the time that the False Statements were republished by the media to the Overland Park Convention Center.

61.     There was the probability of future economic benefit to NYS in its prospective business relationship with the hundreds or thousands of individuals and families who would have attended various "The" events but for the False Statements, as evidenced by the decreased enrollment at such events since August 2009.

62.     The Regional BBB Defendants knew or should have known about the aforementioned actual and prospective business relationships.

63.     The existing customers who sought to cancel their contracts with "The" because of the False Statements themselves have asserted that, were it not for the False Statements, they would have maintained their business relationship with NYS.

64.     Paul Weber and Christian Kaplan, who asked that "The" cease using their names in its promotional materials, themselves have both asserted that, were it not for the False Statements, they would have continued to allow "The" to advertise their affiliation with "The."

65.     The Overland Park Convention Center, which has recently refused to host "The" events, itself has asserted that, were it not for the False Statements, it would have continued its business relationship with "The."

66.     The Regional BBB Defendants intentionally interfered with the aforementioned actual and potential business relationships by making the False Statements.

67.     The False Statements were wanton and malicious defamation; improper under the laws of the State of Arizona.

12

68.    As a result, NYS has been damaged in the amount of at least $15,000,000.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count II: (i) enter a judgment in favor of the Plaintiff and against the Regional BBB Defendants, jointly and severally; (ii) award the Plaintiff FIFTEEN MILLION DOLLARS ($15,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff SIXTY MILLION DOLLARS ($60,000,000) in punitive damages; (iv) order the Regional BBB Defendants pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

### COUNT III:  CONSPIRACY
### (NYS v. Council of BBBs)

69.    The allegations in paragraphs 1 through 68 are re-alleged and incorporated by reference as if fully set forth herein.

70.    On information and belief, the Council of BBBs employed its information sharing network to re-publish and re-disseminate the False Statements to other regional Better Business Bureau franchises, including the Alaska BBB.

71.    On information and belief, this re-publication was done with the knowledge and intent that regional Better Business Bureau franchises would further re-publish and re-disseminate the False Statements to both the general public and media outlets nationwide.

72.    The Council of BBBs therefore acted in concert with the Regional BBB Defendants in furtherance of their defamation and tortious interference.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count III:  (i) enter a judgment in favor of the Plaintiff and against the Council of BBBs, jointly and severally with

the Regional BBB Defendants; (ii) award the Plaintiff FIFTEEN MILLION DOLLARS ($15,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff SIXTY MILLION DOLLARS ($60,000,000) in punitive damages; (iv) order the Council of BBBs to pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on issues so triable.

DATED this 18th day of October, 2010.

**WHITE BERBERIAN PLC**

By___/s/Steven White_____
    Steven M. White
    60 East Rio Salado Pkwy., Ste. 900
    Tempe, Arizona 85281
    *Attorney for Plaintiff*

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF FILING AND SERVICE

Pursuant to the Case Management/Electronic Case Filing Administrative Policies and Procedures Manual ("CM/ECF Manual") of the United States District Court for the District of Arizona, I hereby certify that on October 18, 2010, I electronically filed:

## AMENDED COMPLAINT

with the U.S. District Court clerk's office using the ECF system, which will send notification of such filing to the assigned Judge.

/s/Steven White
Steven M. White
WHITE BERBERIAN PLC
60 East Rio Salado Pkwy., Ste. 900
Tempe, Arizona 85281
*Attorney for Plaintiff*

15

EXHIBIT  5

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### (St. Louis Division)

| | |
|---|---|
| **NEW YORK STUDIO, INC.,** ) | |
| ) | |
| **ATLAS INTELLECTUAL PROPERTIES, LLC,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **RISE OF THE PHOENIX, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. _____** |
| ) | |
| **THE BETTER BUSINESS BUREAU** ) | **(JURY TRIAL DEMANDED)** |
| **OF GREATER ST. LOUIS, INC.,** ) | |
| **Michelle L. Corey, President, CEO, and R/A** ) | |
| **15 Sunnen Drive, Ste. 107** ) | |
| **St. Louis, MO 63143** ) | **(SERVE BY PRIVATE PROCESS)** |
| ) | |
| _____ **Defendant.** _____ ) | |

## COMPLAINT

Plaintiffs New York Studio, Inc., Atlas Intellectual Properties, LLC, and Rise of the

Phoenix, Inc. (hereinafter collectively referred to as the "Plaintiffs" or "NYS") requests

judgment and damages from Defendant The Better Business Bureau of Greater St. Louis, Inc.

(the "St. Louis BBB" or "Defendant").

## PARTIES

1.      New York Studio, Inc. is a Delaware corporation, which trades under the business

name "The" and is in the business of organizing modeling and acting events nationwide.  New

York Studio, Inc. is a non-exclusive licensee of Atlas Intellectual Properties, LLC.

2.      Atlas Intellectual Properties, LLC is a Delaware limited liability company that

owns the rights to the "The" trademark, brand, and related intellectual property assets, and which

receives licensing fees from the use of that trademark by New York Studio, Inc. and Rise of the
Phoenix, Inc.

3.     Rise of the Phoenix, Inc. is a Delaware corporation, which trades under the
business name "The" and is in the business of organizing modeling and acting events
nationwide.  Rise of the Phoenix, Inc. is a non-exclusive licensee of Atlas Intellectual Properties,
LLC and is also a franchisor of the "The" brand.

4.     The St. Louis BBB is a Missouri non-profit corporation that is a local franchise of
the Council of Better Business Bureaus, Inc. (a Delaware corporation).

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28
U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy
exceeds $75,000.00.

6.     This Court has personal jurisdiction over the St. Louis BBB because the St. Louis
BBB is a Missouri corporation with a principal place of business in this judicial district.

7.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a).

## ALLEGATIONS OF FACT

8.     NYS is engaged in the business of organizing the acting and modeling events
nationwide under the "The" brand.  "The" events are performance-based talent competitions that
represent a wholesome, fun and family-oriented way to expose children to certain aspects of the
entertainment business.  The children are provided with an opportunity to meet and perform for
representatives from in the entertainment industry, and each participant gets their chance to
shine, just as people auditioning for TV shows like "American Idol" or "America's Got Talent"
are provided an opportunity to showcase their talents.

9.      On August 1, 2009, New York Studio, Inc. purchased the "The" trade name, trademarks, business goodwill, and other business assets related to the "The" modeling and acting event organization business from NedGam Productions, LLC, a Nevada limited liability company.

10.      The managing member of NedGam Productions is George Gammon, who is also the managing member of another Nevada limited liability company, DGS Productions, LLC, which trades under the names "ACT" and "Academy of Cinema and Television."  Therefore, prior to August 1, 2009, the companies trading as "ACT" and "The"—although distinct entities—had common ownership.

11.      New York Studio, Inc., Rise of the Phoenix, Inc. and Atlas Intellectual Properties, LLC are owned by Michael Palance, who is the sole shareholder or sole member of those entities.

12.      Neither New York Studio, Inc., Rise of the Phoenix, Inc., nor Atlas Intellectual Properties, LLC has any ownership interest in NedGam Productions or DGS Productions, and they have never had any ownership interest in these companies.

13.      Neither NedGam Productions nor DGS Productions has any ownership interest in New York Studio, Inc., Rise of the Phoenix, Inc., or Atlas Intellectual Properties, LLC, and they have never had any ownership interest in NYS.

14.      Michael Palance does not have any ownership interest in NedGam Productions or DGS Productions, and he has never had any ownership interest in these companies.

15.      Since purchasing the "The" brand and business assets in August 2009, NYS has invested significant resources in developing a nationwide reputation for providing aspiring

young models and actors with a rare opportunity to perform live at a family friendly event which takes place at the Walt Disney World Swan and Dolphin Hotel.

16.     In November 2010, Atlas Intellectual Properties, LLC purchased the "T*he*" trademarks, brand, and other intellectual property and business goodwill related to "T*he*" from New York Studio, Inc., granting New York Studio, Inc. a license to continue using those trademarks and intellectual property.

17.     Also in November 2010, Atlas Intellectual Properties, LLC entered into a franchise and intellectual property licensing agreement with Rise of the Phoenix, Inc. related to "T*he*."

18.     Neither NYS nor the "T*he*" business are currently or ever have been engaged in the business of offering or providing modeling agency or talent agency services or acting school services.

19.     Since purchasing the "T*he*" brand and business assets in August 2009, NYS has invested significant resources in improving T*he*'s reputation, which suffered from some negative publicity prior to the purchase related to a few consumer complaints and an early 2009 investigation by the Connecticut Attorney General regarding some contractual provisions in one of NedGam Productions' agreements.

<u>The Phoenix BBB's "Business Reliability Report"</u>

20.     Between August 1, 2009 and late August or early September 2010, The Better Business Bureau, Inc. (the "Phoenix BBB"), another local franchise of the Council of Better Business Bureaus, Inc, published on its website a single "Business Reliability Report" for ACT, which falsely stated that "T*he*" is a fictitious business name of ACT and that "T*he*" is a drama instruction school.

21.     During this time, if any consumer or business affiliate of "T*he*" searched for "T*he*" on any of the Better Business Bureau's national or regional websites, they were directed to the aforementioned "Business Reliability Report" published by the Phoenix BBB.

22.     This "Business Reliability Report" falsely stated or falsely implied that there had been thirty-nine (39) consumer complaints filed against "T*he*" in the past thirty-six (36) months (as of August 2010), twenty (20) of which were "serious complaints."

23.     This is false and misleading because only a few of these complaints were actually filed against "T*he*"; the remainder were filed against the numerous other entities falsely grouped as fictitious names on the "Business Reliability Report."

24.     The "Business Reliability Report" is also false and misleading because "T*he*" is not a drama instruction school.

25.     Despite actual knowledge of the falsity of the "Business Reliability Report," the Phoenix BBB continued to publish the false report on its website through late August or early September 2010.

26.     The Phoenix BBB has disseminated the false report to the St. Louis BBB, as well as other regional BBBs.

27.     On information and belief, the Council of Better Business Bureaus, Inc., national franchisor to the regional BBBs, induced, facilitated, and conspired in the aforementioned re-dissemination of the false information between regional BBBs through its nationwide information sharing network.

<u>The St. Louis BBB's Republication</u>

28.     On information and belief, the St. Louis BBB has engaged in a pattern of republication of the Phoenix BBB's false statements, from August 2009 through the present.

29.     Although there is not a separate "Business Reliability Report" issued for "T*he*" by the St. Louis BBB, it has made numerous knowingly false republications of the Phoenix BBB's false statements to both consumers and the media.

30.     These republications were intentionally timed to coincide with planned "T*he*" events in the St. Louis area.

31.     In August 2010, just before a scheduled "T*he*" event in Chesterfield, Missouri, the St. Louis BBB affirmatively issued press releases and reached out to local media repeating the Phoenix BBB's falsehoods about the number of complaints against "T*he*" and its purported affiliation with ACT.

32.     In August 2010, when consumers called the St. Louis BBB to inquire about the upcoming "T*he*" event in Chesterfield, Missouri, representatives of the St. Louis BBB told the consumers, "Leave your wallet at home."

<u>The Effects of the False Statements</u>

33.     Since August 2009, numerous "T*he*" customers who had already willingly entered into an agreement to attend a "T*he*" event have contacted "T*he*" seeking to cancel their contract and asking for a full refund based solely on hearing about the contents of the Phoenix BBB's "Business Reliability Report," as republished by the St. Louis BBB, either directly to consumers or via local or national media outlets.

34.     Since August 2009, attendance at "T*he*" events nationwide has decreased markedly as a direct result of the Defendant's defamatory statements and re-publication of those statements.

35.     Since August 2009, two of the Hollywood casting directors that regularly attended "T*he*" events have expressed concern about continuing their long and fruitful relationship with

"The" because of the negative publicity that is being generated by the Phoenix BBB and the St. Louis BBB. As a direct result of the negative publicity, these casting directors have asked NYS to refrain from using their names in connection with "The" promotional materials.

36.     Since August 2009, two of the venues that have regularly hosted "The" events in the past have refused to host additional events, causing the cancellation of a planned "The" event.

## COUNT I:  DEFAMATION

37.     The allegations in paragraphs 1 through 36 are re-alleged and incorporated by reference as if fully set forth herein.

38.     The statements made by the St. Louis BBB after August 1, 2009 that (1) "The" is the same company or is affiliated with ACT; (2) there have been thirty-nine (39) consumer complaints filed against "The" in the past thirty-six (36) months (as of August 2010), twenty (20) of which were "serious complaints"; and/or (3) "The" is an acting and modeling agency (collectively, the "False Statements") are false, and the facts underlying those statements are false.

39.     The False Statements are of, or concerning, NYS d/b/a "The."

40.     The False Statements have harmed and continue to harm the reputation of NYS, lower the company in the estimation of its consumers and business partners, and deter consumers and business partners from doing business with and associating with NYS.

41.     The St. Louis BBB has published the False Statements to actual and potential consumers of NYS, as well as to local and national media outlets.

42.     The St. Louis BBB made the False Statements with actual malice, existing at the time the False Statements were made, with a wanton and willful disregard of the rights of NYS,

and with a reckless indifference to and a reckless disregard of the truth or falsity of those statements.

43.     The False Statements constitute a substantial danger to NYS's reputation and prejudice NYS in its profession or trade, as they are allegations of unfitness to carry on a business or profession.

44.     The False Statements are actionable *per se*, and as such, require no proof of actual injury to be actionable.

45.     In addition, NYS has suffered actual injury in this case because the False Statements induced actual customers to seek cancellation of their contracts, potential customers to avoid doing business with NYS, and business partners to refuse to continue in their business relationship with NYS.

46.     NYS has invested time and resources to counter the False Statements and rehabilitate its professional reputation.

47.     These actual damages from the False Statements total at least $15,000,000.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count I:  (i) enter a judgment in favor of the Plaintiff and against the St. Louis BBB; (ii) award the Plaintiff FIFTEEN MILLION DOLLARS ($15,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff SIXTY MILLION DOLLARS ($60,000,000) in punitive damages; (iv) order the St. Louis BBB to pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

## COUNT II:  TORTIOUS INTERFERENCE WITH CONTRACT AND/OR BUSINESS EXPECTANCY

48.     The allegations in paragraphs 1 through 47 are re-alleged and incorporated by reference as if fully set forth herein.

49.     There was an existing business relationship between NYS and numerous customers who had already contracted to attend a "*The*" event at the time the St. Louis BBB made the False Statements or at the time that the False Statements were republished other regional BBBs or by the media to these customers.

50.     There was an existing business relationship between NYS and casting directors Paul Weber and Christian Kaplan at the time the St. Louis BBB made the False Statements or at the time that the False Statements were republished by the media to Paul Weber and Christian Kaplan.

51.     There was an existing business relationship between NYS and the Overland Park Convention Center and the Columbus Convention Center at the time the St. Louis BBB made the False Statements or at the time that the False Statements were republished by other regional BBBs or the media to the Overland Park Convention Center and the Columbus Convention Center.

52.     There was the probability of future economic benefit to NYS in its prospective business relationship with the hundreds or thousands of individuals and families who would have attended various "*The*" events but for the False Statements, as evidenced by the decreased enrollment at such events since August 2009.

53.     The St. Louis BBB knew or should have known about the aforementioned actual and prospective business relationships.

54.     Many of the existing customers who sought to cancel their contracts with "*The*" because of the False Statements themselves have asserted that, were it not for the False Statements, they would have maintained their business relationship with NYS.

55.     Paul Weber and Christian Kaplan, who asked that "The" cease using their names in its promotional materials, themselves have both asserted that, were it not for the False Statements, they would have continued to allow "The" to advertise their affiliation with "The."

56.     The Overland Park Convention Center and the Columbus Convention Center, both of which have recently refused to host additional "The" events, themselves have asserted that, were it not for the False Statements, they would have continued their business relationships with "The."

57.     The St. Louis BBB intentionally interfered with the aforementioned actual and potential business relationships in making and re-disseminating the False Statements.

58.     The False Statements were wanton and malicious defamation; improper under the laws of the State of Missouri.

59.     As a result, NYS has been damaged in the amount of at least $15,000,000.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count II:  (i) enter a judgment in favor of the Plaintiff and against the St. Louis BBB; (ii) award the Plaintiff FIFTEEN MILLION DOLLARS ($15,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff SIXTY MILLION DOLLARS ($60,000,000) in punitive damages; (iv) order the St. Louis BBB to pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on issues so triable.

Respectfully submitted,
NEW YORK STUDIO, INC., ATLAS
INTELLECTUAL PROPERTIES, LLC,
AND RISE OF THE PHOENIX, INC.,
By Counsel


By ____/s/David G. Wasinger_____
     David G. Wasinger #38253MO
     Michael K. Daming #52864MO
     The Wasinger Law Group, P.C.
     1401 S. Brentwood Blvd.
     Magna Place, Suite 550
     St. Louis, MO  63144
     Tel.: 314-961-0400
     Fax.: 314-961-2726
     dwasinger@wasingerlawgroup.com


     David Ludwig
     Dunlap, Grubb & Weaver, PLLC
     199 Liberty St, SW
     Leesburg, VA 20175

     *Attorney for Plaintiffs*