UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NEW YORK STUDIO, INC., ATLAS INTELLECTUAL PROPERTIES, LLC, and RISE OF THE PHOENIX, INC., <br><br>Plaintiff, <br><br>v. <br><br>BETTER BUSINESS BUREAU OF ALASKA, OREGON, AND WESTERN WASHINGTON, <br><br>Defendants. | No. 3:11-cv-05012-RBL <br><br>ORDER GRANTING DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS <br>[Dkt. #12]. |

.

## I. INTRODUCTION

This matter is before the Court on defendant Better Business Bureau of Alaska, Oregon, and Washington's ("Alaska BBB") Special Motion to Strike pursuant to the Washington Act limiting strategic lawsuits against public participation ("Anti-SLAPP Act"), and Motion to Dismiss under FRCP 12(c). [Dkt. #12, Defendant's Motions]. Plaintiff New York Studio is a company that holds talent competitions for children. It has asserted claims of defamation, tortious interference with a contract or business expectancy, and violation of the Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA").

Plaintiffs New York Studio, Inc.; Atlas Intellectual Properties, LLC; and Rise of the Phoenix, Inc. (together "New York Studio"); are incorporated in Delaware and are all owned by

Michael Palance. Plaintiffs all hold an interest in "T*he*," a company that holds talent competitions for children, during which children meet and perform for entertainment industry representatives. Defendant Alaska BBB is a Washington state non-profit licensed by the Council of Better Business Bureaus, Inc. Alaska BBB's mission is to create and encourage a community of trustworthy businesses while denouncing substandard business behavior. [Dkt. #13, p. 2, Declaration of Eshpeter].

Alaska BBB issued a press release urging consumers to be cautious of talent auditions being held at the convention center on October 9, 2010. New York Studio asserts claims for defamation, tortious interference with a contract or business expectancy, and violation of the Alaska CPA. Alaska BBB claims that its press release is an act of public participation and is not defamatory, a tortious interference, or a violation of the Alaska CPA. Alaska BBB has filed a Special Motion to Strike New York Studio's claims based on the Washington Anti-SLAPP Act. The Court has reviewed the entirety of the record therein. For the reasons set forth below, the Court GRANTS the Motions to Strike and Dismiss.

## II. BACKGROUND

In October 2010, New York Studio ran radio advertisements for an event to be held at the Dena'Ina Civic and Convention Center in Anchorage, Alaska. [Dkt. #14, p. 1, Declaration of Sims; Dkt. #16, p. 2, Declaration of Palance]. The advertisements targeted parents and children by mentioning "Disney" and other shows or movies popular with children and encouraged interested parties to call a phone number for more information. [Dkt. #14, p. 1; Dkt. #16, p. 2]. Alaska BBB received inquiries from consumers about these radio advertisements. [Dkt. #14, p. 1]. Tara Sims, the Alaska Public Relations Manager for Alaska BBB, realized the advertisements did not provide a company name, only a telephone number. *Id.* When Sims called the phone

number and identified herself as a representative of the BBB, she was put on hold, then told by a new person that they "don't deal with the Better Business Bureau" and was disconnected. *Id.* at 2.

On October 8, 2010, Alaska BBB issued a press release cautioning consumers attending child talent auditions on October 9, 2010, at the Dena'Ina Civic and Convention Center in Anchorage. The press release identified the radio advertisements as those that encourage consumers to call an "888" number for auditions, mention names like "Disney," and do not disclose the company's name. *Id.* The BBB press release did not contain the company's name. *Id.* The press release included a general caution for consumers against any "opportunities" that require money upfront, and provided tips for dealing with talent and modeling agencies, as well as companies that do not provide their contact information or which ask for upfront fees. *Id.* The press release was distributed via email to Alaska BBB's "PR Media Database" list of 259 regional contacts, including television, newspaper, radio, organization, government, chamber of commerce, and educational contacts. [Dkt. #20, p. 2, Supplemental Declaration of Sims]. The press release was also posted on the Alaska BBB website in its local "News Center" section. *Id.*

After the Alaska BBB press release, at least ten different media outlets in Alaska investigated and ran their own stories on television and in the newspaper. [Dkt. #14, p. 2]. Some of this media coverage included direct references to "T*he*" and Michael Palance. *Id.* "T*he*" held its event on October 9, 2010, with less attendance than it anticipated based on similar events in other markets. [Dkt. #16, p. 3]. On October 10, 2010, many families signed contracts and paid various enrollment fees. *Id.* On October 11, 2010, several families called to cancel the contracts they had signed with "T*he*," and requested and received refunds. Two of the callers specifically mentioned the Alaska BBB press release as the reason for cancelling their contracts. *Id.*

New York Studio sued, claiming defamation, tortious interference with a contract or business expectancy, and violation of the Alaska CPA. Alaska BBB moves to strike New York Studio's claims under the Anti-SLAPP Act and for dismissal under FRCP 12(c).

### III. STANDARDS

**A. Judgment on the Pleadings Standard (Fed. R. Civ. P. 12(c))**

An FRCP 12(c) motion for judgment on the pleadings utilizes the same standard as an FRCP 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted in that it may only be granted when it is clear to the court that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) (citing to: *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); *Newman v. Universal Pictures*, 813 F.2d 1519, 1521-22 (9th Cir. 1987)). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [Id.]. Although the Court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper [Rule 12(b)(6)] motion. *Vasquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*).

**B. Anti-SLAPP Act Standard**

The 2010 Revised Washington Anti-SLAPP Act was intended to address lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. It addresses these lawsuits because it is in the public interest for citizens to participate in matters of public concern and provide information to public entities and other citizens on public issues that affect them without fear of reprisal through abuse of the judicial process. RCW 4.24.525; Senate Bill 6395, Laws of 2010, Ch. 118, §1. The Anti-SLAPP Act allows defendants to shift a relatively high burden to the plaintiff with a Special Motion to Strike. This burden is higher than that of a Motion to Dismiss under FRCP 12(c).

When faced with what it believes to be a public participation lawsuit, a defendant may make a special motion to strike the claims of the plaintiff. To qualify for a Special Motion to Strike, there must be an action involving public participation and petition. This includes any oral or written statement in a public forum in connection with an issue of public concern; or any lawful act of the constitutional right of free speech or right of petition in connection with an issue of public concern. RCW 4.24.525(2)(d)-(e)

To prevail on a Special Motion to Strike, defendant bears the initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation or petition. If this initial burden is met, then the burden shifts to the plaintiff to

establish by clear and convincing evidence a probability of prevailing on the claim. If the plaintiff meets this burden, the Motion to Strike will be denied. RCW 4.24.525(4)(b)

### IV. DISCUSSION

#### 1. Plaintiff's Burden

New York Studio argues that the Court should interpret the burden of "probability of prevailing" as the California courts have, by stating that a "plaintiff need only have stated and substantiated a legally sufficient claim" to satisfy the probability of prevailing standard. [Dkt. #15, p. 6, Plaintiff's Memorandum, quoting *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 358, 9 Cal. Rptr. 3d 197, 228 (2004)].

Alaska BBB argues that the plain meaning of the Washington Anti-SLAPP Act should be applied because it is plain and unambiguous. [Dkt. # 17, p. 3, Defendant's Reply] Furthermore, Alaska BBB argues that Washington included a high burden so that the Anti-SLAPP Act may be applied and construed liberally. *Id.*, citing Senate Bill 6395, Laws of 2010, Ch. 118, §3.

The California Anti-SLAPP Act has distinctly different language from the Washington Anti-SLAPP Act, because the California law only requires a "probability of prevailing" and does not require the higher burden of "clear and convincing evidence of a probability of prevailing" required by Washington law. RCW 4.24.525(4)(b); Cal. Stat. 425.16(b)(1). Washington law is different from California law for the Anti-SLAPP statute purposefully places a high burden on the plaintiff.

#### 2. An Act of Public Participation

To prevail on its initial burden, Alaska BBB must prove by a preponderance of the evidence that its press release was "an action involving public participation and petition." RCW

ORDER - 6

4.24.525(2)(d)-(e). Alaska BBB claims that its press release was such an action because it was made available to the general public on the Alaska BBB website, and it was distributed to various media outlets. [Dkt. #12, p. 10]. Alaska BBB claims that its press release occurred in the public forum required of the Anti-SLAPP Act because it was a news publication that was a "vehicle for discussion of public issues and it is distributed to a large and interested community." *Id.*, at 11, quoting *Annette F. v. Sharon S.*, 119 Cal. Rptr. 4th 1146, 15 Cal. Rptr. 3d 100 (2004). The press release was picked up by multiple media outlets who ran stories on the matter. [Dkt. #14, p. 2]. Alaska BBB claims that these further actions by the media show that it was a matter of public concern because it was one in which "the public takes an interest." [Dkt. #12, p. 12, quoting *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042, 72 Cal. Rptr. 3d 210 (20080].

New York Studio claims that Alaska BBB has not satisfied its burden of showing that its press release was an act of public participation and petition. New York Studio claims that the Declaration of Sims [Dkt. #14], is not sufficient in showing to whom or how the press release was issued. [Dkt. #15, p. 8].

The Supplemental Declaration of Sims shows that the Alaska BBB press release was sent to the Alaska BBB's "PR Media Database" list of 259 contacts including various media outlets. [Dkt. #20, p. 2]. The press release was posted on the Alaska BBB's website in its local "News Center" section of press release headlines. *Id.* It is now available in the archived articles section of the "News Center." *Id.* at 3. New York Studio has not responded to the Supplemental Declaration of Sims [Dkt. #20], with any further claims.

Alaska BBB has shown that the press release was distributed to a number of media outlets and was also available to the public on its website. The press release was a matter of

public concern because it was a general caution to consumers, and multiple media outlets investigated the matter on their own. Alaska BBB has met its burden of showing by a preponderance of the evidence that its press release was a matter of public participation and petition. Therefore under the Anti-SLAPP Act, the burden shifts to New York Studio to show by clear and convincing evidence a probability of prevailing on its claims of defamation, tortious interference, and violation of the Alaska CPA.

**3. Defamation**

New York Studio must show clear and convincing evidence of a probability of prevailing on its claim of defamation in order to survive Alaska BBB's Special Motion to Strike by the Anti-SLAPP Act. New York Studio asserts a defamation claim based on "false statements" that were not in the Alaska BBB press release.[1]

New York Studio's initial claim is flawed because it refers to what it believes were defamatory statements that are not contained in the Alaska BBB press release and are only partially contained in other states' BBB reports and press releases.[2] New York Studio claims the

---

[1] Plaintiff claims that the following statements were included in Alaska BBB's press release and were defamatory: " there had been numerous consumer complaints against "T*he*" in the past thirty-six months, that "T*he*" is an acting and modeling agency, and that "T*he*" is the same company or affiliated with ACT. [Dkt. 1, p. 7- Plaintiff's Complaint]

[2] The Arizona BBB issued "Business Review Reliability Report for ACT" in August of 2010 that contained a listing of the number of complaints against ACT. [Dkt. #13, p. 6, Exhibit 1] The Arizona Report does not list the business name "T*he*." The St. Louis BBB issued two press releases regarding "T*he*." The press releases do not refer to "T*he*" as an acting or modeling agency, but do refer to the company as "aka NedGam Productions, LLC" and refer to the Arizona Report on ACT. [Dkt. #13, p. 10, Exhibit 2] New York Studio purchased the "T*he*" trade name, trademarks, business goodwill, and other business assets from NedGam Productions, LLC on August 1, 2009. Previous to this purchase, NedGam Productions owned both "T*he*" and DGS Productions, LLC (that trades under the names "ACT" and "Academy of Cinema and Television"). Plaintiff New York Studio clarifies this distinction of business names and is currently engaged in litigation with the Arizona BBB and St. Louis BBB in other jurisdictions. [Dkt. #1, p. 3; Dkt. #13, p. 15-42, Exhibits 4-5]

identifying characteristics of the radio advertisements in Alaska BBB's press release are implications that it is a talent and modeling agency, that consumers should not do business with. Alaska BBB argues that New York Studio's defamation claim is deficient as a matter of law. It asks the Court to strike New York Studio's defamation claim under the Anti-SLAPP Act because New York Studio cannot show by clear and convincing evidence a probability of prevailing on its claim. Alaska BBB claims that its press release was neutral, non-identifying[3], of limited general information, based on legitimate concerns about the radio advertisements, and not harmful. [Dkt. #12, p. 3-4, 16].

A defamation claim has four elements: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). The plaintiff's burden of proof on an Anti-SLAPP Special Motion to Strike is to establish by clear and convincing evidence a probability of prevailing on the claim. RCW 4.24.525(2)(d)-(e).

a. Falsity

The first element of a defamation claim is a false statement. Because the press release contained no false statement, New York Studio's defamation claim must necessarily rest on implication of a false defamatory statement in the press release. New York Studio claims that it is not necessary for the Alaska BBB press release to mention New York Studio by name, rather it is sufficiently implicated by the business's description and references to the event at the Convention Center. [Dkt. #15, p. 10, citing *Spangler v. Glover*, 50 Wn.2d 473, 480, 313 P.2d, 354, 358-59 (1957)]. Additionally, New York Studio claims "T*he*" is falsely represented as a talent or modeling agency by the Alaska BBB's press release. [Dkt. #15, p. 12]. The press release urged consumers attending the October 9th event to "take caution" and then provided

---
[3] The name "T*he*" (or any other company name for that matter) is not mentioned in Alaska BBB's press release. [Dkt. #12, p. 13]

ORDER - 9

general information or advice about dealing with talent or modeling agencies. Alaska BBB is not required to prove that every word of its press release was true, merely that the statement is "substantially true." *Mohr v. Grant*, 153 Wn.2d 812, 825, 108 P.3d 768 (2005).

The standard of defamation by implication is whether "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Prosser and Keeton on The Law of Torts* 116, at 117 (W. Page Keeton ed., 5th ed.1984, Supp.1988) (footnote omitted). Plaintiff must demonstrate not only all four elements of defamation but also that the "statement is provably false—either because it is a false statement or leaves a false impression." *Corey v. Pierce Cnty.*, 154 Wn. App. 752, 761-62, 225 P.3d 367 (2010). Defamation by implication will not be found when there is simply a juxtaposition of true statements. *Yeakey v. Hearst Commc'ns.*, 156 Wn. App. 787, 790, 234 P.2d 332 (2010). The press release by Alaska BBB juxtaposes two truthful statements: one describing the radio advertisements and one providing general advice for working with a talent or modeling agency. The difference between a "talent agency" and a "talent showcase business" is not so distinguishable as to create a false or defamatory impression by the Alaska BBB's press release. The Alaska BBB press release does not contain factual assertions (true or false), it provides advice to consumers. Because New York Studio's factual claim of falsity does not rise above mere speculation, New York Studio is unable to establish by clear and convincing evidence a probability of prevailing on the claim of defamation.

For this reason, a detailed discussion of the remaining elements of New York Studio's claim is not required. Suffice it to say, New York Studio cannot meet its Anti-SLAPP burden of establishing that the press release was unprivileged or that there was fault. Even if damage is

ORDER - 10

assumed, the defamation claim fails. Alaska BBB's Special Motion to Strike New York Studio's claim of defamation is GRANTED and that claim is DISMISSED.

### 4. Tortious Interference with a Contract or Business Expectancy

New York Studio contends that through its press release, Alaska BBB tortiously interfered with numerous existing relationships and contracts. Under the Anti-SLAPP Act, New York Studio bears the burden of proof of clear and convincing evidence of a probability of prevailing on its tortious interference claim. New York Studio claims its existing relationships and contracts include customers already contracted to attend the "T*he*" event in Anchorage, two casting directors, two different venues in other areas of the country where "T*he*" events had been held in the past, and a probability of future economic benefit. [Dkt. #1, p. 9, Plaintiff's Complaint]. New York Studio alleges that Alaska BBB knew or should have known about these actual and prospective business relationships based on the number of consumer inquiries that Alaska BBB received leading up to the "T*he*" event in Anchorage. [Dkt. #1, p. 9; Dkt. #15, p. 17]. New York Studio alleges an intentional interference with improper purpose or by improper means by Alaska BBB's press release. New York Studio alleges the press release and media coverage that followed caused a termination and breach of these business relationships and expectancies because of customers seeking to cancel their contracts, two casting directors requesting that their names no longer be used on promotional materials, and two convention centers no longer willing to host "T*he*" events. [Dkt. #1, p. 9-10]. Furthermore, New York Studio alleges that Alaska BBB's press release was not motivated by consumer inquiries, but as retaliation for being told that "T*he*" did not "deal with the Better Business Bureau" and hung up. [Dkt. #15, p. 18].

ORDER - 11

Alaska BBB contends that New York Studio must demonstrate that it had actual knowledge of a contract or business expectancy in order to tortiously interfere. [Dkt. #12, p. 18]. Alaska BBB further contends that even if it had such knowledge, its press release was not an improper interference because it did not specifically identify New York Studio. It did not state whether or not New York Studio is a talent or modeling agency. The press release did not mention whether any complaints had been lodged against New York Studio. *Id.* Rather, the press release contained vague information for the purposes of setting standards for trustworthy business practices. *Id.*

To satisfy a claim of tortious interference, New York Studio bears the burden of proving: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Pacific Northwest Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351, 144 P.3d 276 (2006), quoting *Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wn.2d 133, 157, 930 P.2d 288 (1997).

Alaska BBB likely knew people would attend the "T*he*" event and that "T*he*" had relationships with different venues that host these events because it issued its press release as an urge of caution to those attending the event at the convention center. It is unclear whether Alaska BBB had any knowledge of New York Studio's relationships with casting directors. The press release by Alaska BBB does not constitute an intentional interference for an improper purpose or by improper means because it was simply a press release cautioning consumers about attending talent auditions and providing general advice to consumers. The press release did not instruct customers or business partners to break their existing relationships with New York Studio or tell

prospective customers to not do business with New York Studio; it contained only advice on being a smart consumer.

New York Studio cannot demonstrate the necessary clear and convincing evidence a probability of prevailing on its claim of tortious interference in order to survive the Anti-SLAPP Special Motion to Strike. Alaska BBB's Special Motion to Strike New York Studio's claim of tortious interference is GRANTED and that claim is DISMISSED.

**5. Violation of Alaska Unfair Trade Practices and Consumer Protection Act**

New York Studio asserts a violation of the Alaska CPA by Alaska BBB's press release. New York Studio must show by clear and convincing evidence a probability of prevailing on this claim in order to survive Alaska BBB's Anti-SLAPP Act Special Motion to Strike. New York Studio alleges that Alaska BBB made false statements in the conduct of trade or commerce, and that these false statements denigrated the business of New York Studio. [Dkt. #1, p. 10]. New York Studio alleges that Alaska BBB's press release satisfies the definition of an "unfair or deceptive act or practice" by representing that New York Studio's services have characteristics that they do not have and disparages the services and businesses of New York Studio with false or misleading information. [Dkt. #15, p. 18, referring to Alaska Stat. §45.50.471].

Alaska BBB contends that it shares the same goal as the Alaska CPA in preventing unfair business practices. [Dkt. #12, p. 19]. Additionally Alaska BBB claims that its press release cautioning consumers did not constitute an unfair act or business practice because the press release was neutral and unbiased and did not identify New York Studio by name. *Id.*

In order to prove a violation of the CPA, New York Studio must demonstrate that: (1) Alaska BBB is engaged in trade or commerce; and (2) in the conduct of trade or commerce, an unfair act or practice has occurred. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520 (Alaska

1980). An act is unfair or deceptive if it has the capacity or tendency to deceive. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520 (Alaska 1980) (quoting *Federal Trade Commission v. Raladam Co.*, 316 U.S. 149, 152, 62 S.Ct. 966, 86 L.Ed. 1336 (1942)). Deception can be shown merely by consumers testifying that they were misled. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 535 (Alaska 1980) (internal citations omitted). Unfairness is judged by whether the practice was unlawful, contrary to public policy, immoral, unethical, unscrupulous, oppressive, or causes substantial injury to consumers. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 535 (quoting *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n.5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)).

The Alaska CPA and Alaska BBB share the goal of protecting consumers against unfair or deceptive business practices. This is evident in Alaska BBB's press release, warning consumers to exercise caution when dealing with companies that do not provide their full contact information, allow consumers to review their contracts, or require payment upfront. The press release's urge of caution to consumers is not unlawful, against public policy, immoral, unethical, unscrupulous, or oppressive and it did not cause substantial injury to consumers.

Whether or not Alaska BBB's consumer protection warnings would be considered trade or commerce is irrelevant because its urging consumers to be cautious is not an unfair act or practice. New York Studio has not shown by clear and convincing evidence a probability of prevailing on this claim. Alaska BBB's Special Motion to Strike New York Studio's claim of violation of the Alaska CPA is GRANTED and that claim is DISMISSED.

\*\*\*

The Court shall award the defendant who prevails, in whole or in part, on an Anti-SLAPP Act Special Motion to Strike, the costs of litigation and any reasonable attorneys' fees incurred

in connection with each motion on which the moving party prevailed; an amount of ten thousand dollars, not including the costs of litigation and attorney fees; and if the court determines to be necessary, additional relief as sanctions upon the responding party and its attorneys to deter repetition of the conduct. RCW 4.24.525(6)(a).

If the court finds the motion to strike to be frivolous or solely intended to cause unnecessary delay, then it shall award to the Plaintiff who prevails, in whole or in part, the costs of litigation and attorneys' fees incurred in connection with each motion on which the responding party prevailed; an amount of ten thousand dollars, not including the costs of litigation and attorneys' fees; and additional relief as sanctions upon the moving party and its attorneys as the court determines to be necessary to deter repetition of the conduct and comparable conduct by others similarly situated. RCW 4.24.525(6)(b).

Alaska BBB satisfied its burden that its press release was an act of public participation. New York Studio failed to satisfy the burden of clear and convincing evidence of a probability of prevailing on its claims of defamation, tortious interference, and violation of the Alaska CPA.

## V. CONCLUSION

Because New York Studio has not met the burden of clear and convincing evidence of a probability of prevailing on its claims against the Anti-SLAPP Special Motion to Strike, it is not necessary for the Court to address these claims in the context of the Motion to Dismiss under FRCP 12(c). The Court notes though that at the very least New York Studio's claim of defamation could not withstand the 12(c) burden because it fails to allege a false statement.

The Court orders the statutory minimum of a $10,000 award of statutory penalties, reasonable attorneys' fees and the cost of the motion to Alaska BBB be paid by New York

Studio. Alaska BBB shall make an application to the Court for reasonable attorneys' fees within fourteen days.

**IT IS SO ORDERED.**

Dated this 13th day of June, 2011.

*/s/ Ronald B. Leighton*
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE